THE ALLISON BROTHERS' COMPANY, Respondent, v. OSCAR W. ALLISON, Appellant.

In order to include in an assignment of letters patent, or patent rights, future patents for new inventions in the line of manufacturing the same article, the language of the assignment must be very plain and the evidence unmistakable that such an assignment was in the mind of the assignor as well as that of the assignee.

This is especially so where new inventions sought to be appropriated under an assignment are devices wholly independent of those covered by the original patents, and are capable of being put into practice entirely independent of them and without infringing the original patent.

The owners of two letters patent, each "for a new and useful improvement in cigarette machines," assigned a third interest therein and also in "any improvements, renewals or re-issues of said cigarette machines or letters patent," the meaning being declared to be to vest in the assignee "an undivided third of said patents, extensions or improvements thereof." The assignor and assignee entered into partnership. At the time of the issuing these patents, cigarette machines were in existence. Subsequently another person was admitted into the firm, the original co-partners executing to him an assignment of a one-fourth interest in all patents, machines, etc., then used and owned by the firm in the manufacture of cigarettes, "as well as new patents, machines, machinery or appliances which may be used or obtained in connection with said business," the intention being declared to be to give to each of the parties a fourth interest "in all patents and improvements on the same which may hereafter be

made." After the dissolution of the firm, the original patentee, who was one of the assignors first mentioned, discovered new mechanical devices for the making of cigarettes, and there were issued to him five letters patent, each being as stated therein " for improvements in ciga- rette machines." These devices were not, in fact, improvements upon the machines manufactured under the original patents and could not be used thereon without substantial alterations, but were distinct and rival inventions capable of being put into use without using the machine containing the originally patented inventions or infringing upon the original patent rights. *Held,* that the new inventions were not included in and did not pass by the assignment.

To justify the reformation of a contract, upon the ground of mistake, it must appear that the mistake was mutual, and the fact that a different agreement was intended by both parties must be established by evi- dence uncontrovertible, clear and convincing.

*Allison Bros. Co.* v. *Allison* (70 Hun, 27), reversed.

(Argued October 16, 1894; decided November 27, 1894.)

Appeal from judgment of the General Term of the Supreme Court in the fifth judicial department, entered upon an order made June 23, 1893, which affirmed a judgment in favor of plaintiff entered upon a decision of the court on trial at an equity term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Theodore Bacon* for appellant. The plaintiff established no cause of action. (*Hare* v. *Van Deusen,* 32 Barb. 92; *N. Y. S. & L. Co.* v. *Cary,* 10 Abb. [N. S.] 44; *Haddow* v. *Lundy,* 59 N. Y. 320, 326; *F. L. & T. Co.* v. *U. L. T. Co.,* 47 Hun, 315; *Kennedy* v. *Hazleton,* 128 U. S. 667; *Lamson* v. *Martin,* 159 Mass. 557; *Hapgood* v. *Hewitt,* 119 U. S. 226; *P. & N. R. Co.* v. *Samson,* L. R. [19 Eq.] 464; *S. M. Co.* v. *Stebbins,* 4 Fed. Rep. 445, 455; *Bunker* v. *Stevens,* 26 id. 245, 249; *Dalzell* v. *D. M. Co.,* 149 U. S. 315; *R. R. Co.* v. *Trimble,* 10 Wall. 367.) The court had no right to render judgment reforming four several written instruments, to each of which John A. Allison was a party, without the presence in court of his representatives, with an opportunity to be heard, so as to be concluded by the judgment rendered. (*Russell* v. *Clark,* 7 Cranch, 69; *Mohr* v. *N. F. I. Co.,* 127

N. Y. 452.)   The findings of fact are based largely on incompetent evidence, admitted over the objection and exception of the defendant. (Code Civ. Pro. § 829; *Potts* v. *Mayer*, 86 N. Y. 302; *Hunter* v. *Herrick*, 26 Hun, 272; *Green* v. *Edick*, 56 N. Y. 613; *Adams* v. *Morrison*, 113 id. 152; *Clift* v. *Moses*, 112 id. 426; *Stuart* v. *Patterson*, 37 Hun, 113; *Lawton* v. *Sayles*, 40 id. 252.)   The evidence, competent and incompetent, does not sustain the findings of "mutual mistake," either of fact or of law. (*Hunt* v. *Rousmanier*, 1 Pet. 1; *Nevius* v. *Dunlap*, 33 N. Y. 676; 2 Pom. Eq. Juris. § 859; *Mead* v. *W. F. Ins. Co.*, 64 N. Y. 453, 455; *Sawyer* v. *Hovey*, 3 Allen, 331; *S. I. Co.* v. *H. I. Co.*, 102 Mass. 45; *U. S.* v. *Budd*, 144 U. S. 154.)

*John Van Voorhis* for respondent.   The writings are sufficient as they are to entitle the plaintiff to the relief it seeks. The plaintiff is the assignee of all the contracts and rights of all the parties.   Those contracts show that the plaintiff is the owner of the patents for improvements in cigarette machines issued to Oscar W. Allison, and that he should assign those patents to this plaintiff. (*Railroad Co.* v. *Trimble*, 10 Wall. 367; *A. M. Co.* v. *Gill*, 32 Fed. Rep. 697–701; *Littlefield* v. *Perry*, 21 Wall. 206, 226; *Neesmith* v. *Callister*, 1 W. & M. 34; *Plumb* v. *Brewer*, 2 Curtis C. C. 506.)   Counsel for the defendant claims that an assignment contract by which a man agrees to sell future inventions is a form of slavery and prohibited by the United States Constitution.   Such contracts are perfectly valid. (*Railroad Co.* v. *Trimble*, 10 Wall. 367; *Gaylor* v. *Wilder*, 10 How. [U. S.] 447; *Neesmith* v. *Callister*, 1 W. & M. 34; *Sargent* v. *Eureka Spund Co.*, 46 Hun, 19; *M. A. F. M. Co.* v. *Singley*, 42 N. Y. 893.)   All the parties who can in any way be affected by any judgment in the action are before the court.   Any interest which Fred P. Allen and John A. Allison and F. De Witt Clarke had in these patents and improvements and contracts were assigned to the plaintiff corporation, and they no longer have any interest in the premises.   They are not necessary

parties. (Code Civ. Pro. §§ 498, 499; *Sullivan* v. *N. Y. R. C. Co.*, 119 N. Y. 355; *Mathews* v. *Steitz*, 5 Civ. Pro. Rep. 235.) The cause of action for reforming the contracts was pleaded as a matter of caution and safety. We claim that the language of the writings is sufficient to give the plaintiff the patents claimed. But if the court should have any doubt about that the evidence shows beyond doubt that any omissions in the writings occurred through the mutual mistake of the parties, and the mistake relates to the effect to be given to the language used. (*Southard* v. *Curley*, 134 N. Y. 148; *Griswold* v. *Hazard*, 141 U. S. 260; *Crippen* v. *Baum*, 15 Hun, 136; *N. Y. I. Co.* v. *N. W. Ins. Co.*, 23 N. Y. 357.) F. De Witt Clarke, being sick and about to die, his testimony was taken before the trial, by stipulation, before Mr. Hutchins, the stenographer. His deposition thus taken *de bene esse* was the first item of evidence upon the trial. No objection was made to any question when the deposition was taken, but when the same was read after the death of the witness nearly fifty objections were made to questions. The ruling in each case when the objection was not sustained was: "The objection was overruled subject to the right to move to strike out." There was no error in any of these rulings. (*Denise* v. *Denise*, 110 N. Y. 562; 41 Hun, 9; *Curr* v. *McGuire*, 28 N. Y. 452; *Franklin* v. *Pinckney*, 18 Abb. 186; *Eddington* v. *Æ. Ins. Co.*, 77 N. Y. 570; *Lewin* v. *Russell*, 42 id. 250.)

GRAY, J. The action was brought for the purpose of enjoining the defendants from manufacturing cigarette machines, or granting licenses to use them, etc., and for the further purpose of reforming certain agreements; to which the defendant was a party and which related to interests in patents for cigarette machines. The first purpose seems to have been abandoned and the action, being tried upon the latter ground, resulted in a judgment for the plaintiff; reforming the agreements in question, in the respects prayed for. The defendant had been a machinist and became interested in the designing of machines for making cigarettes. Such a

machine already existed; but he discovered a new mechanical process and obtained a patent, in 1880, "for a new and useful improvement in cigarette machines." Subsequently, he assigned to his brother a half interest in the patent. In 1882, Clarke formed a partnership with them and at first put $5,000 into the business; under an agreement, which licensed the firm to use the patented machine for a term of years. Very shortly afterwards, however, that agreement was canceled and a new agreement was made, by which the two Allisons assigned, each, to Clarke an undivided sixth interest in two letters patent "for an improvement in cigarettes and cigarette machines and any improvements, renewals, or re-issues of said cigarettes, cigarette machines, or letters patent * * * to the full end of the term for which said letters were granted and for the term of any extension, any improvements thereof, or re-issues thereon * * * meaning hereby to vest in said Clarke one undivided third of said patents, extensions, or improvements thereof." In 1883, Allen was admitted into the firm and put into the business the sum of $25,000; purchasing a fourth interest thereof. An agreement, drawn by him, was executed by the parties; by which there was assigned to him by the Allisons and Clarke "an undivided fourth part of all patents, machines, machinery, stock, etc., now used and owned by parties of the first part in the manufacture of tobacco, cigarettes, etc., under the firm name of Allison Brothers and Co., as well as new patents, machines, machinery or appliances which may be obtained or used in connection with said business," the intention of the agreement being declared to be that each of the four parties should have "an undivided one-fourth interest in all patents and improvements on the same, which may hereafter be made, machines, stock and business of the firm of Allison Brothers and Co., making each an equal partner in the same."

The co-partnership thus existing was thereafter changed into a corporation; which is the present plaintiff. A bill of sale was first executed, transferring to the new corporation the firm property and its patent interests; but, later, it was

deemed expedient, more formally, to vest in the corporation the title to the patent interests and an agreement was executed by the Allisons and Clarke; by which they, holding the record title, assigned to it their respective interests in the described letters patent, which they had "heretofore enjoyed as members of the firm and which had been used by said firm. This transfer to include any improvements, renewals, or re-issues of said patented improvements, or letters patent, etc." The defendant, within a year, became dissatisfied and severed his relations with the company. After he left, he discovered new mechanical devices for making cigarettes and there were issued to him five letters patent; each issue being "for improvements in cigarette machines." The object of the present action was to secure to the plaintiff the right to these new patents, by virtue of the assignments, which have been referred to. The judgment recovered was based upon findings, in each case, to the effect that "the agreement which the writing was intended to express" was that Clarke, or Allen, took an equal interest with the others in the patents already issued and in all the new inventions and improvements, which the defendant should make in machinery for the manufacture of cigarettes, and if the writing was insufficient to express that agreement, the omission was "by the mutual mistake of all the parties;" and, also, with respect to the corporation that was formed, the finding was of similar import; that the firm and each member thereof agreed to transfer to it every interest in improvements in cigarette machines, including the invention of new devices, etc., and all patents therefor and if the bill of sale was insufficient, the omission was caused by the mutual mistake of the parties. In affirming the judgment below, the General Term, evidently, was unwilling to place the right to relief upon a reformation of the instruments in question and it was there held that they were sufficient to vest in the plaintiff the right to any and all after inventions. While it is readily perceived that it may be important to the plaintiff, as conducing to its business success and prosperity, to have the agreements so construed, or

reformed, as to cover all new patents for inventions by the defendant of improvements in these machines, the question to this defendant is of paramount importance; for, if such was his agreement, he had assigned away for all time the product of his inventive talent, in the line of its particular development; or, to refer to Mr. Justice BRADLEY's observation, in *Aspinwall Mfg. Co.* v. *Gill* (32 Fed. Reporter, 700), had given a "mortgage on his brain to bind all its future production."

As it seems to be usually the case with inventors, the defendant's necessities obliged him to have resort to some one possessed of means, in order to develop the machine on which he was then at work. The moneys went into that work, but not into his pocket. His severance of relations with the corporation, according to his account, was caused by the intolerable continuance of the material wants and the stress of his daily needs; pecuniary provision for which, he says, he was unable to procure to be advanced to him. Whether his account is true; or whether, according to evidence for the plaintiff, his departure was rather due to some unworthy motive to injure it for his own benefit, is, of course, not a controlling consideration. The question is, what had the parties agreed to? With respect to these four instruments, the two first, mentioned as made with Clarke and afterwards with Allen, only need engage our attention; for under the two subsequent ones, to which the plaintiff corporation was a party, it could get nothing more, in our opinion, than what the firm of Allison Brothers and Co. owned. In the bill of sale, the firm transferred to the plaintiff, besides the property and plant on hand, "all patents or interests in patents owned by any or either of said firm for improvements in cigarettes and cigarette machines, or machinery for manufacturing same." The subsequent and more formal assignment to plaintiff transferred to it "the rights and privileges enjoyed by said firm" in certain improvements covered by two described issues of letters patent. The concluding statement, "this transfer to include any improvements, renewals, and re-issues of said patented improvements,

or letters patent Nos. etc., etc., etc.," adds nothing to broaden the transfer. We must consider, then, what Clarke and, after him, Allen obtained from the defendant by the instruments, to which they were parties. The assignment to Clarke was of a third interest in specific letters patent "and any improvements, renewals or re-issues of said cigarette machines, or letters patent," and the meaning of the instruments was declared to be, "to vest in said Clarke an undivided third of said patents, extensions, or improvements thereof." The assignment to Allen transferred to him from the firm, composed of the Allisons and Clarke, a fourth interest in the patents, etc., used by them in the manufacture of cigarettes, under the firm name of Allison Brothers & Co., "as well as new patents, machinery or appliances which may be obtained or used in connection with said business;" and the explicit declaration of "the intention of the agreement" was that each party should have a fourth interest "in all the patents and improvements on the same, which may hereafter be made, * * * of the firm of Allison Brothers & Co., etc., etc."

The important word in these instruments is "improvement" and it is to be noticed that it is used in connection with and as dependent upon the existing patents and machines. The "improvements," an interest in which was transferred to Clarke, are described as "of said cigarette machines, or letters patent;" or of the said patents. If by that term new and independent-inventions were not included, then it is too doubtful to predicate a recovery upon what was comprehended in the assignment to Allen; for, apparently, he only obtained what the firm had a right to in the way of improvements; that is "new patents * * * which may be obtained in connection with said business." His assignment related only to what the firm was using in the way of a patented machine.

The term "improvement," used as it is here with respect to certain patents, or machines, cannot be deemed to be equivalent to some entirely new process, which is independent of the former invention. The same article produced by the former machine may be, also, produced by means of a new invention,

or device, which would be quite independent, in the process of manufacture, of the existing machine. It seems pretty plain that an agreement to include future improvements, or additions to an invention should, in the purchaser's interest, be made to include any such process; if the purchaser is to preclude the vendor from afterwards setting up a rival invention. (See Morris Patents-Conveyancing, 33–34.) The patents, in question in this litigation, precisely, are distinct and rival inventions; for it was proved, and it was not disputed, that they were not infringements and the finding of the court was that defendant's inventions cannot be used on plaintiff's machines, without substantial alterations. Nor is there any finding that these new patents were improvements to, or upon, the machines owned by the plaintiff. The proof was that they not only do not make use of the plaintiff's devices; but that they cannot be used upon the existing machines. It must be borne in mind that the defendant was not the first inventor of a cigarette machine. He invented improvements in such machines. An improvement might involve the addition of something which did not involve invention and yet might modify or affect the result of operation. The word is to be governed, necessarily, in its application, by the sense which the context lends to it. In these instruments, as the word is used, it conveys the idea of an improvement of or about the machine patented and in use by the firm, by way of addition or change and not of improvements in cigarette machines, which would be independent of the existing one. An improvement of a machine, or of a patent, which these instruments mention, cannot, in our opinion, be deemed to cover all future inventions of devices for the making of cigarettes by machinery. Without citing authorities, we think that they and the text books sustain the view that, in order to include, generally, future patents for new inventions, in the line of manufacturing a certain article, or product, the language of the contract must be very plain and evidence unmistakably that such an agreement was in the mind of the inventor, as well as in that of the purchaser from him of patent interests. That seems

especially true in a case like this where, as before observed, the inventions sought to be appropriated are devices wholly independent of those covered by plaintiff's patents, and capable of being put into practice without using its machines, or infringing upon its patent rights. There is no difficulty, if the purchaser of an interest in patent rights wishes to include any improvements by new processes and devices, which the inventor may thereafter discover and patent, in expressing such an agreement in simple and unambiguous language, which will exclude doubt as to so far-reaching a contract.

Holding this view, with respect to the construction of these instruments, should the decree below be sustained, which reforms them by inserting a clause appropriate to comprehend the defendant's future discoveries and patents? Is the proof of that degree, that the court would be authorized to alter the contracts of the parties, on the ground stated of "a mutual mistake" in expressing themselves therein? Certainly, the power of a court of equity extends to giving relief, not only in cases where the agreement, through fraud or accident, varies from what the parties intended; but, also, where, through mistake, their intention has not been expressed. (*Henkle* v. *Assurance Co.*, 1 Ves. Sen. Ch. 317.) But, as Lord Chancellor Hardwicke observed in that case, "there ought to be the strongest proof possible" that "the contract in writing has been framed contrary to the intent and real agreement." Chancellor Kent said that "the most demonstrative proof, especially against the answer denying the mistake," was necessary. (*Lyman* v. *Ins. Co.*, 2 Johns. Ch. 630.) Judge Redfield, in a note to section 157 of Story's Equity Jurisprudence (11th ed.), says: "The proof must be such as will strike all minds alike as being unquestionable and free from reasonable doubt." A court of equity, in correcting an agreement by parties upon the ground of mistake, proceeds upon the theory that it does not express their real sense and it is most evident that the mutuality of the mistake must be made out, and the fact of a different agreement having been intended by both established, by evidence

which is clear and convincing. As Spencer, Ch. J., said, upon the review of *Lyman* v. *Ins. Co.* (*supra*) in the Court of Errors, "It is not enough, in cases of this kind, to show the sense and intention of one of the parties to the contract. It must be shown incontrovertibly that the sense and intention of the other party concurred in it. In other words, it must be proved that they both understood the contract as it is alleged it ought to have been and as in fact it was but for the mistake." So, in *Nevius* v. *Dunlap* (33 N. Y. at p. 680), Brown, J., relying upon the authority of *Lyman* v. *Ins. Co.* (*supra*) and of Mr. Justice Story (Equity Jur. 157), observed: "To entitle a party to the decree of a court of equity reforming a written instrument, he must show, first, a plain mistake, clearly made out by satisfactory proofs. Whenever the evidence is loose, equivocal, or contradictory, or is in its texture open to doubt, or opposing presumptions, the relief will not be granted." In that case the question related to the reformation of a bond and this court, considering the evidence not up to the requisite standard, reversed the judgment which the General Term had affirmed. All of these observations, with respect to the right to relief under this head of equity jurisprudence, are in accord with the legal theory that courts of justice can only carry into effect such contracts as the parties have made and cannot make contracts for them; which would be the result, if they varied the executed instrument upon proof which was equivocal, or contradictory. In the present case, the proofs upon which the Special Term adjudged the relief were not only contradictory, but most equivocal. It is impossible to say that they are convincing, with respect to the intention of the parties to make different agreements than those which were formally executed by them. The General Term justices, themselves, seemed to doubt the sufficiency of the proof to warrant a reformation; for their opinion, in affirmance, proceeds upon the theory of a construction of the instruments favorable to the plaintiff's claim.

Let us consider these proofs. In the first place, we must bear in mind that cigarette machines were previously in exist-

ence as inventions and that what the defendant discovered and worked out into practical shape was an improvement in such machinery, or a new mechanical process; capable of making cigarettes to the greater advantage of the manufacturer, in economy, expedition, or otherwise. Such a machine he had made and patented, at the time he and his brother secured Clarke as a partner and the contribution from him of some capital. Capital was requisite to develop the particular machine, when he came into the firm, and its ownership of a patent for it was the inducement for the advance of capital to obtain an interest in the partnership; which, at first, was only a licensee of the owners of the patent, and, subsequently, for the acqui- sition of an interest in the patent rights. When, afterwards, Clarke advanced more money, another patent had been taken out and it was with reference to the two patents that he acquired by the assignment a third interest. The only evidence we have to show any intention of the parties to that instrument to agree differently than it expresses is in the testimony of Clarke, as to preliminary conversations. He does testify that prior to the execution of the second instrument, in a conversation, the Allisons said he should have the benefit of any improvements that should be made and there was, possibly, enough said, in conversation, according to his testimony, to warrant him in supposing that there would be assigned to him an interest in future and new inventions of the defendant. When Allen testifies, with respect to what occurred before his agreement was executed, he is more precise with respect to what the defendant represented and his testimony, standing alone, would make out an intention that he should have, through his payment of moneys, an interest broad enough to include future and new inventions. He drew the agreement and he was permitted to testify that he "intended to make it broad enough to cover the future inventions or machines Allison might make." But the instrument was already drawn, at the time of the conversation in which defendant represented that he was going to make another machine and that he, Allen, "was buying an interest in the

whole thing," and not in consequence of it. But, however, with respect to their several agreements, the testimony of Clarke and of Allen may be regarded, the defendant denies that he made the statements or representations attributed to him by each of them and he explicitly denies that he, or, so far as he knew, his brother, ever agreed that, if more capital was put in, they would put in any invention pertaining to tobacco machines which they might invent. So we have as against instruments apparently full and carefully drawn, and each one of which was executed with many formalities, merely, in each case, the statement of Clarke, or of Allen, which is explicitly contradicted by the defendant. The instruments are complete to transfer the interest in specific patents and in any improvements of, or upon, the patented machine. Shall the court, in the face of an agreement complete upon its face, upon this contradictory evidence, make a different agreement for the parties? Is the proof positive enough and unequivocal? Can it be said that the findings are supported by the proofs? We think not and we think that the facts, in the deliberations and negotiations of the parties prior to the making of each agreement; in the evidence of unusual care in its making; in the formalities of its execution; in the absence of any corroboration of Clarke, or of Allen, in circumstances, or otherwise; all, together, tend to emphatically rebut the inference of any omission in the agreement of the nature claimed and that they, taken in connection with the explicit denial and contradiction of the defendant, did not warrant the finding of a mutual mistake of the parties, whereby the agreements executed did not express their real agreements.

The views we have expressed lead to the conclusion that the judgment below should be reversed and that a new trial should be ordered; with costs to abide the event.

All concur.

Judgment reversed.