(13 App. Div. 459.)

GREENE v. SMITH.

(Supreme Court, Appellate Division, Fourth Department. January 27, 1897.)

1. REFORMATION OF INSTRUMENTS—EVIDENCE.
    A finding that it was the intention of the parties to a written contract providing for interest on certain payments that the interest should be compounded annually will be set aside, as against the weight of the evidence, where reformation of the contract was not sought until 20 years after it was executed, and the finding is supported only by the testimony of the party seeking reformation, and opposed by that of the other party to the contract, who has assigned his rights therein and has no interest in the event.

2. APPEAL—REVIEW OF FACTS—FINDING NOT EXCEPTED TO.
    An exception by appellant to the referee's conclusions of law brings up for review the findings of fact, and therefore a finding not supported by the evidence will be disregarded, in order to sustain the judgment, though it was not excepted to by respondent.

Appeal from judgment on report of referee.

Action by William C. Greene, as receiver of the Merchants' Bank of Lockport, against E. Ashley Smith, for an accounting. From a judgment in favor of plaintiff, defendant appeals. Affirmed.

July 15, 1873, Edward Roby, of Chicago, Ill., in consideration of $63,076, paid and secured to be paid, received a conveyance of 315.38 acres of land in Lake county, Ind. One-fourth of the consideration ($15,769) was paid in cash, and the remainder ($47,307) was secured to be paid by 12 promissory notes given by Edward Roby to the vendors, for $3,942.25 each. Four of them were payable within one year from July 15, 1873, four within two years from July 15, 1873, and four within three years from July 15, 1873, with interest at the rate of 8 per cent. per annum, payable semiannually. The payment of these notes was secured by a mortgage executed by Edward Roby to the vendors of the premises. July 28, 1873, Dayton S. Morgan, of Brockport, N. Y., advanced to Edward Roby the $15,769 which he paid down on receiving the grant of the premises. December 26, 1873, a written contract, under seal, was entered into between Morgan and Roby, which described the land and the terms of its purchase, and recited that Morgan had furnished the $15,769 paid on the purchase, and provided that Morgan should advance the money to pay the notes, and that out of the proceeds

of the sale of the land he was to be paid his advances, with "interest on the down payment and all moneys which he may hereafter advance upon said purchase at the rate of ten per cent. per annum, to be computed and compounded semi-annually, on the 15th day of July and January in each year." The contract also provided that Roby was to take charge of and sell the premises without compensation, and after Morgan had been paid the sums advanced, with interest as provided, he was to have two-thirds of the net proceeds of lands sold, and own two-thirds of all lands unsold, and Roby was to have one-third of the net proceeds of all lands sold, and own one-third of all lands unsold. December 26, 1873, a written contract, under seal, was entered into between Dayton S. Morgan and Joseph W. Helmer, of Lockport, N. Y., in which it was recited that Helmer had paid to Morgan one-half of the sum which he had paid upon said purchase, and, in consideration of said Helmer agreeing to pay one-half of all the moneys which Morgan should be required to pay under his contract with Roby, Helmer was to have one-half of Morgan's interest in the lands and in the moneys received from the sale thereof. Roby and Helmer were brothers-in-law. Upon the execution of the contract of December 26, 1873, Edward Roby, Dayton S. Morgan, and Joseph W. Helmer each owned an undivided third interest in the land, Morgan and Helmer being bound to pay the purchase price thereof. February 4, 1874, Joseph W. Helmer and E. Ashley Smith, the defendant herein, entered into a written contract, under seal, of which the following is a copy:

"Whereas, Joseph W. Helmer, of Lockport, N. Y., bought of Dayton S. Morgan, of Brockport, N. Y., an undivided one-half of his interest in three hundred and fifteen and $38/100$ acres of land, more or less, situate in the county of Lake and state of Indiana, more particularly described in a contract made between said Morgan and Edward Roby, of Chicago, on the 7th day of August, A. D. 1873, a copy of which is hereto annexed, and by the terms of the agreement for such purchase of said Morgan, bearing date December 26th, 1873, between the said Helmer and Morgan, the said Helmer agreed to pay to the said Morgan one-half of the purchase price of the said lands, as it shall become due and payable according to the terms of the said agreement between the said Morgan and Roby, above referred to, together with one-half of the taxes and other necessary expenses; and, for a more particular description and specification of the interest so purchased by said Helmer, reference is hereby had to said contracts,—one between said Morgan and Roby, and one between said Morgan and said Helmer,— or the copies thereof hereto annexed.

"Now, in consideration of the premises herein contained, and of one dollar to him by said Helmer paid, E. Ashley Smith, of Lockport, Niagara county, New York, doth hereby covenant and agree to and with said Helmer that he will furnish and advance the money and make the payments provided to be made by said Helmer in and by the said agreement between said Morgan and Helmer above referred to, a copy of which is hereto annexed, being the one-half of the original purchase money and the taxes and other necessary expenses. The said E. Ashley Smith has already paid one-half of the first payment of the said purchase price, and one-half of the expenses and improvements, being all thereof that by said agreement between said Morgan and Helmer said Helmer was to pay, the receipt of which is hereby acknowledged; and in consideration of the premises the said Helmer doth hereby sell, assign, transfer, and set over to said E. Ashley Smith all his right, title, and interest in and to the said several contracts, and in and to the lands and premises therein described, to have and to hold, to him, his executors, administrators, and assigns, forever, subject nevertheless to the following provision, to wit:

"*Whenever and as soon as the said premises and lands shall have been sold, as is contemplated in and by said agreements, the said Smith, from his proportion of the purchase money, shall first have refunded to him and be reimbursed the whole amount he shall have paid, with interest thereon, and whatever surplus shall remain, if any, shall then be divided equally between said Helmer and Smith, and the land then and thereafter remaining unsold shall be divided, under said contract, so that said Smith and Helmer shall have equal shares. Quality and quantity relative considered.*

"In case said premises shall in any manner be divided and partitioned before enough shall have been sold to reimburse said original purchase money, interest,

and other improvements and expenses, then, upon said Helmer paying to him, said Smith, the equal one-half of the amount so paid by said Smith, with interest thereon, or a sum sufficient, with what said Smith may have received from the sale of said lands, to reimburse him for such one-half, then said land shall be divided and partitioned so that said Helmer and Smith shall have and own equal shares, quality and quantity relatively considered, and each of said shares shall be subject to such rights therein as Roby may be entitled under said contract between said Morgan and said Roby, and entitled to its proportion of the sum or sums to be paid by said Roby; and, in case of such partition and division last provided for, said Helmer hereby covenants and agrees to so pay and reimburse said Smith the equal one-half of said payments so made by him, and interest thereon, first applying to such payments whatever he may have received from the sale of said lands; and in consideration of the premises the said Helmer hereby covenants and agrees that, in case any loss shall occur in the enterprise and adventure, that he, said Helmer, shall and will pay to him, said Smith, the equal one-half of such loss; and, in arriving at the result, interest upon all payments by said Smith shall be computed and allowed him.

"Witness our hands and seals at Lockport, N. Y., this 4th day of February, A. D. 1874.                                    Joseph W. Helmer.  [Seal.]
                                                   "E. Ashley Smith.   [Seal.]"

August 5, 1876, Joseph W. Helmer was indebted to the First National Bank of Lockport, N. Y., in the sum of $10,306.31, for which the bank held his promissory note; and, for the purpose of securing the payment of said note, said Helmer, by a written assignment, under seal, and dated that day, assigned to said bank all his interest in the three contracts, "as collateral security for the payment of any or all indebtedness, of whatever name and character the same may be, which I am under to said bank, and for the payment of any paper which may be taken for, or in renewal or in substitution therefor, from time to time." This note was renewed from time to time, the last renewal being dated July 11, 1877, by which Joseph W. Helmer promised to pay to his own order $10,306.31, with interest, six months after date, at the First National Bank of Lockport; and thereupon he indorsed and delivered the note to said bank, no part of which—principal or interest—has been paid. The plaintiff has succeeded to the rights of the bank in said note and contracts. Morgan and the defendant advanced the moneys to pay for the land, as provided in said contracts; and from time to time, until January 21, 1891, parcels were sold and payments received, and on the date last mentioned the last parcel was sold, and payment therefor received.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, WARD, and GREEN, JJ.

E. M. Ashley, for appellant.
David Millar, for respondent.

FOLLETT, J.   Whether a settlement has been had between the defendant and Morgan and Roby does not appear, but no question is raised that all the parties necessary for the complete determination of the controversy are not before the court.   The plaintiff insists, and the referee found, that the rights of the litigants are to be determined by the italicized paragraph in the contract of February 4, 1874; and the defendant's counsel concedes that, if this contention is sound, the judgment is right and should be affirmed. But the defendant alleges in his answer that the contract of February 4, 1874—

"Does not set forth and express the true meaning of the parties as to, and of and concerning, the actual agreement made between said parties, and pursuant to which the said paper writing was drawn, and purports to set forth; that in and by said agreement it was expressly agreed and provided by and between said parties that, whenever and as soon as the said lands and premises in said contract

referred to should have been sold as therein contemplated, the said Smith, from his proportion of the purchase money on said sale, should first have refunded to him, and be reimbursed for, the whole amount he should have paid on account of the purchase money of said lands, and other improvements and expenses on account thereof, with interest thereon, at and after the rate of 8 per cent. per annum, computed and compounded annually, and that whatever surplus should remain over and above that, if any, should be divided equally between said Helmer and Smith, and that in arriving at the result as to whether there was a profit or loss, and the amount thereof, interest upon the advances and payments made by said Smith should be computed annually, and compounded, at the rate of eight per cent. per annum, and should be so computed in the same manner as provided for in the said contract between said Morgan and Roby, except that the rate of interest should be 8 per cent. per annum, instead of 10 per cent., and be computed annually, instead of semiannually."

It is further alleged in the answer that the provision in respect to interest at the rate of 8 per cent., to be compounded annually, was omitted from the written contract because Joseph W. Helmer stated to the defendant that such a provision would make the contract usurious and void, but that the oral agreement in that respect would be performed by him, and the defendant, by his answer, asked that the contract be reformed by the insertion of the omitted provision, and that the accounting be had pursuant to the contract as so reformed.

The referee found as a fact:

"Ninth. That prior to, and on the day of, the execution and delivery of the agreement hereinbefore described, between Joseph W. Helmer and E. Ashley Smith, it was understood and agreed between said Helmer and said Smith that said Smith was to be allowed and paid interest on his payments and advances at the rate of eight per cent. per annum, compounded annually; but by a mistake of law the said rate, and the method of compounding, were not expressed in the said agreement, it having at said time been represented to said Smith by said Helmer, and believed by both said Smith and said Helmer, that to express the interest reserved at eight per cent., compounded annually, would render said agreement usurious, and that it was best to trust said Helmer to pay the eight per cent., compounded annually."

As a conclusion of law the referee found:

"First. That the mutual mistake in the contract hereinbefore referred to, between Joseph W. Helmer and E. Ashley Smith, being a mistake of law, the defendant is not entitled to have the same reformed."

The learned counsel for the respondent insists that the ninth finding of fact is not sustained by the evidence, within the rule applicable to actions for the reformation of contracts. It has long been the settled rule that contracts will not be reformed unless it is established by evidence, clear and convincing, that the instrument does not express the contract actually entered into between the parties. Allison Bros.' Co. v. Allison, 144 N. Y. 21, 38 N. E. 956; Southard v. Curley, 134 N. Y. 148, 31 N. E. 330, and cases cited. Many of the authorities hold that the existence of a mutual mistake must be demonstrated beyond a reasonable doubt. In the case at bar the contract had existed for 20 years without its having been asserted that it did not express the intent of the parties thereto. Large sums of money had been disbursed and received under it, and, so far as the record discloses, no claim had ever been made until shortly before this action was begun that the defendant was en-

titled to 8 per cent. interest, to be compounded annually. It seems improbable that it should have been agreed that the defendant was to have 8 per cent. interest, to be compounded annually, without deducting from the sums advanced the sums received from the sale of the lands, but such is the claim. The defendant testified positively that it was agreed that he should receive 8 per cent. interest, to be compounded annually, on all sums which he should advance under the contract. The other party to the contract testified as positively that there was no such agreement, and in this he was sustained by the written contract entered into, under seal, 20 years before, the correctness of which had not been challenged in the meantime. Thus the record stands, oath against oath by the parties to the contract. The plaintiff's witness had long since parted with all his interest in the contract, and, besides, as before stated, his testimony is corroborated by the written contract of 20 years' standing. Contracts solemnly entered into, which have existed and been acted on, unchallenged, for years, are not to be changed by inserting important provisions, and especially as against an assignee of one of the parties, simply upon the oath of an interested party, when his testimony is denied by the testimony of the other party to the contract, unless there are circumstances which substantially demonstrate the truth of the evidence of the party who testifies to the existence of a mutual mistake. I think the evidence in this case does not sustain the finding that it was mutually agreed that the defendant was to receive 8 per cent. per annum, compounded annually, on all sums which he should advance under the contract. It is said in the opinion of the referee, and in the points of the appellant's counsel, that in 1876 Helmer and Smith accounted, and that 8 per cent. interest was charged on the advances made by Smith. No evidence of such an accounting is found in the record, and the opinion of the referee cannot be resorted to for facts to sustain or reverse the judgment. Again, the account set up in the defendant's answer begins with this item, "December 4, 1873, on account of purchase money, $5,600," and is continued down to the time when the land was sold; and the referee's statement of the account begins with the same item, but is dated December 4, 1876,—evidently a printer's error in the year, as the year following is 1874. The learned referee allowed the defendant's account, as claimed by him, with few trivial exceptions, and allowed him interest at the rate of 7 per cent. from the beginning to the end, not reducing the rate to 6 per cent. on the 1st day of January, 1880, and did not charge the defendant with interest on the sums which he had received from the sale of land. To this the plaintiff took no exception. Under the rule laid down by the courts of this state for the reformation of contracts, we think the record discloses no error of which the defendant can legally complain.

It is urged by the appellant's counsel that, the plaintiff not having excepted to the ninth finding of fact, it cannot be reviewed on this appeal. All the rulings upon questions of law were in favor of the plaintiff, and there is no provision in the Code which permits a party in whose favor all the issues of law are decided

to except to the report of a referee. An exception by the unsuccessful party to rulings of law brings before the court the validity of the findings of fact, and there is no provision authorizing either party to except to a finding of fact unless there is no evidence tending to sustain it, in which case it becomes a ruling upon a question of law. Code Civ. Proc. §§ 992–994. Upon such a record the findings of fact may be reviewed.

The judgment should be affirmed, with costs. All concur.